I don't seem to have Mr. Rzicka. Oh no. Did I get a notice? Is it Mr. Shaka? Who's arguing for Mr. Rzicka? For the appellate? Yeah, my name is Eric Rzicka. I think on the screen it lists me as Rima Murphy, which is just a CAMPA challenge that we have. Very good. That clears that up. I think we've got everyone that's going to be participating. Unfortunately, not in person, but we hope we want the arguments to go as effectively as we can. So please proceed. Thank you, Your Honor. May it please the court. My name is Eric Rzicka. I represent appellants Catherine Pals and Gordon Engel, personal representatives of the estates of Jameson and Catherine Pals and their three young children, Ezra, Violet, and Calvin Pals. In this appeal, we respectfully request that the court reverse the district court's award of summary judgment and direct this matter to trial. There are two key issues I want to focus on this morning, which I will briefly highlight and then go into in more detail. First, at its core, this case involves the fact-specific analysis of whether the accident caused by Wheatley was reasonably foreseeable to defendants. In this case, defendants actually did foresee that the rear-end collisions would naturally result if they unreasonably failed to alert the Nebraska Department of Roads of the dangerous traffic conditions that required additional warnings to the public. This case is about the very tragedy that the contractors actually foresaw, understood their obligation to act on, and yet did nothing to prevent. Second, in this case, the magistrate judge issued a spoliation sanction because after the fatal crash, IHC willfully destroyed key safety records documenting concerns regarding the safety of the traveling public, including concerns about traffic conditions in the construction zone. These safety records were ran those safety meetings on the weekends and saved the meeting minutes. IHC was ordered to present Mr. Barnes' laptop for a forensic examination. After being ordered to do so and before the examination occurred, IHC destroyed the laptop and the meeting minutes that would have been on it. With that backdrop, let me now turn to the foreseeability issue in more detail. We seek reversal because the district court incorrectly applied a decision of this court, Bauman v. Zukov, to hold that Tony Weakley Jr. severed the causal connection between the peltie's negligence and the PAL's deaths. Bauman, as I know this panel is well aware, sets forth the law that applies to this case, but its facts are so categorically different from the facts here that it was error for the district court to summarily conclude that Weakley's was wrong. On page 954, before we get into the succession crash situation in Bauman, we observe that Nebraska has held that the negligence of a landowner or a government agency that created a hazardous road condition was not the proximate cause of a highway because the driver's negligence was an efficient intervening cause. That, to me, is exactly what we have in this case. So Bauman is, this case is even more on point than Bauman. This is a government contractor. The Bauman, I guess it's DICTA, the reference to Nebraska law, was a government agency. They are one and the same for these purposes, I would suggest. Well, as the court found in Bauman, you need to look at the facts very carefully and you need to do a searching factual analysis. And it's all about foreseeability. And was it foreseeable that the accident that occurred, was that accident foreseeable to the defendants? And in this case, it was. In Bauman, the court very carefully looked at the foreseeability of the accident that ultimately occurred and was caused by Mr. Sleezak. And in that case- Counselor, you missed the point. The point is that the foreseeable in a succeeding crash situation is much more direct and in the forefront of the situation. When you have a government agency or its contractor building a road or doing some such thing, there's always the possibility in the future that a negligent driver will happen upon, will trigger a tragedy like this one. But the foreseeability is far more remote and therefore more difficult for the plaintiffs to establish. In this case, the foreseeability was not remote. The foreseeability is actual. In this case, you- We're talking about the foreseeability of a truck driver who's not paying any attention at all. As opposed to the, you know, the overall general foreseeability that highway contractors hopefully have of situations that are apt to produce danger. I think we have to- We have to go specific, right? We have to go very specific. And doesn't pay any attention. Well, we have to look at- That's a similarity to Baumann. Are there any facts that a reasonable jury could find that the IHC and DPS saw and could control the potential that this accident would occur? And the specific facts that we have in this case are that they did. In this case, you have Mr. Bert Watts. Mr. Bert Watts was responsible for the safety of this zone. Mr. Bert Watts, on numerous occasions, understood that on weekends that traffic was backing up well into the construction zone where drivers were not expected to be backing up. And he would drive his vehicle down the median ahead of where the backup was starting. He would get out of his vehicle. He would put his flashing lights on. He would put his vest on. And he would wave his arms up and down to those drivers. Why was he responsible for that? He foresaw that the drivers needed additional warning. That there was nothing to warn those drivers that an accident was about to occur and that they needed additional warning to alert them to that. If Mr. Watts's activity does not indicate foreseeability, I don't know what does. The facts here also, however, were that there was no one else had any difficulty. Wasn't that the the evidence that no one else had any trouble stopping along this particular path at this time? Yeah, I think that's one of the important things that the district court erred on. The district court found that that to be the fact, although that's a highly disputed fact. It's even referenced in the district court's order. She references that other drivers described the stop as a brake check, that it came up quick. They described it as a hard stop. One said it was a boom, stop. Others said it described it as abrupt. Another described it as a brake. Give us records, counsel. Give us give us record sites. If you're talking about a deposition or an affidavit, help us find it in the record. Yes, all of those quotes that are just provided are quoted in the district court's order, about page eight or so of the order. I don't have the order in front of me, but those are all quoted right out of her. She actually said it to those herself in her order. But even if we assume that those were actually facts that still should have been in dispute, right? Aren't we going to run into still what I would call is a problem where the Nebraska Supreme Court has just told us that landowners are not bound to anticipate the driver's quote would disregard the obvious danger, right? And in this case, you have somebody that did in fact completely disregard the obvious danger because there's no evidence of braking. There's no evidence of evasive driving. There's the admissions that the driver made, all of which, you know, look like, I mean, the dude was asleep at the switch, right? And there's no evidence from which you could reasonably conclude anything other than that, right? No, I completely disagree, your honor. Let me explain. In Latzel and the series of cases that Willits and there's a series of Nebraska cases, I think they're consistent with that. It was not foreseeable that a driver would ignore a patently obvious danger. And that's the patently obvious. I mean, you know, in those cases, the danger was a blind intersection. The person drove through it anyway. Here, the danger wasn't patently obvious. Here, we have an indication that DPS understood it wasn't patently obvious. That's why Mr. Watts was running out there to warn people. The state of Nebraska's engineer indicated that he designed the project to be free-flowing. Cameron Craig's deposition at appendix 21-22, he said the traffic control plan was for free-flowing traffic. Traffic was not to be stopped by construction activities. So they understood it was a hazard. DPS's project manager, William Rogers, testified that traffic is a dangerous safety hazard. He testified that he understood stop traffic was a dangerous safety hazard. He testified that he knew that on the weekend, traffic stopped unknowingly well into the zone every weekend. And he testified that had he known or that if he was aware of a hazard, he was to notify the state. Those are all in his deposition at appendix 21-84. So he understood that it wasn't known. Everyone understood that traffic was not supposed to be stopping and there wasn't a warning for it to stop. Mr. Wheatley, when he drove into the zone, he testified, and so this is a disputed fact, that if he sees a sign that says be prepared to stop or anything indicating that traffic might stop, he takes his cruise control off, he wouldn't be talking on his Bluetooth, and he would be prepared to brake. When he doesn't see that, he assumes that traffic will flow naturally. And in this case, he assumed that and it wasn't. Also in this case, we had a non-dispoliation issue to contend with. On summary judgment, we cannot have a situation where parties destroy documents that could go strictly to foreseeability, and that doesn't count against them at summary judgment. The court, 8th Circuit hasn't ruled on this. 2nd Circuit did so, and there's a leading case on this in Cronish. Cronish is very on point in this case. In this case, we have a situation where defendants are asking this court to send a message to all defendants in this circuit and across the land that if you have bad facts, destroy them. Deceive the court. Counsel, I have a question. I have a question about your spoliation argument on summary judgment. It seemed to me that the district court was really focusing on Mr. Wheatley's extraordinary negligence, and if that is the focus of her ruling, what would be, I know you're going to say, well, the documents are about foreseeability, but if she really focused on Wheatley's conduct, what would be in the materials that would be relevant to her summary judgment ruling, possibly? You're right, Your Honor. It is about foreseeability because that's the fact issue in the case. For example, if those weekly safety meeting minutes, which Mr. Barnes testified to, contain discussions about safety, discussions about accidents, recommendations that people might have to make the zone more safe. If those safety meetings said, hey, we are concerned that a driver is going to come through here, and because there's no signage, after they cross the median safely and the traffic is going at full speed, that they're not going to be aware in this rural highway that traffic is going to come to a sudden abrupt stop, we should tell the state about it to do something. If the documents said that, you would have a clear foreseeability case. We think we already have foreseeability with Mr. Watts running out there and waving his hands up and down to provide additional warning, but those documents are clearly relevant, and we can't send the message to parties in this district that if you destroy your documents, you will be able to win summary judgment as a result. Counsel, you asserted that there was an adverse inference ruling by the magistrate judge, and I thought all the magistrate judge said was it's a jury issue. The magistrate judge indicated clearly that the exfoliation issue would be put to the jury and that the jury could make the inference if the documents were willfully destroyed. That's a fact issue that must be determined in... No, not if the district court concluded that fact issue wasn't material. Why do we have to send a message on a hypothetical? The magistrate ordered that the evidence regarding exfoliation will be presented to the jury. It was very clear multiple times in her orders, and we said to that in our... So the district court isn't allowed to grant summary judgment when there's that kind of magistrate judge ruling in discovery? Under the Second Circuit case, we do not believe so. I'd like to reserve my 45 seconds. Well, how can that be? Was there a magistrate judge situation in the Second Circuit? I'm not sure what the magistrate did in the Second Circuit, but the Second Circuit was very clear that with there are any facts that support that summary judgment with all inferences in the moving party's mind. I'd like to reserve the rest of my time. Thank you. Thank you. Mr. Guinan, are you next? Yeah, Guinan. May it please the court, I'm Pat Guinan. I represent the... I represent D.P. Sawyer, Inc. They are the signed company self-contractor that implemented the Nebraska Department of Transportation's traffic control plan, and I'd like to start with the undisputed facts that appellants do not contest in that established Tony Weakley's intervening negligence. Weakley knew he was in a construction zone with head-to-head traffic. When he approached the zone, he passed signs telling him, quote, roadwork ahead, right lane closed, merge left. Weakley merged left, and he drove through the crossover to the eastbound lanes. There were multiple signs warning Weakley that fines double for speeding, and there were too many traffic signs throughout the zone reminding Weakley that he was in head-to-head traffic. Also, there were orange tubular cones every 30 feet in between the two solid yellow lines that separated head-to-head traffic. Weakley knew he had to have a heightened sense of awareness in a construction zone. He testified that he had to have this heightened sense of awareness to be prepared to stop for situations he commonly encountered in construction zones, such as visual obstructions in front of Mr. Weakley. He was in a semi-truck. His line of sight was 10 feet above everybody else. Weakley put his truck on cruise control in the construction zone. He was talking on his cell phone. He looked away from the road to adjust his beverage cup. Weakley did not see the backup or the PALS van until after he collided with the PALS van. Weakley did not see the backup. Stephen Corzine was driving in a truck behind Weakley. Stephen Corzine saw the backup, saw the traffic stop, and he said, he testified his deposition, Weakley did not hit his brakes until after the car spun off into the median. Weakley collided with the PALS vehicle while he was still in cruise control. Also, photographs of the scene show Weakley's tire marks were all within the driving lane at the time of impact, demonstrating they did not execute an evasive steer maneuver despite the shoulder area to the right. Weakley testified that he only needed to observe the PALS van five seconds before impact to break and avoid the collision, but he never saw the PALS van until he crashed into it. It is undisputed that the backup and the PALS van was in Weakley's range of vision and that he had more than five seconds to react. All other drivers that day except Weakley observed the backup and slowed to stop their vehicles. No other driver needed a sign telling them to pay attention to the road and stop their vehicle. Nebraska law requires drivers on the road, whether it's a rural road or an urban road, to pay attention to all conditions that are in front of them. There were no other accidents that day. There were no other accidents in the construction zone. Over a thousand vehicles passed Trooper Crawford's cruiser without incident prior to the collision. Weakley would have avoided the collision, he testified he would have, if he had just paid attention to the road. He didn't pay attention to the road. These undisputed facts are why Judge Smith-Camp and relying on the Bowman case granted summary judgment and concluded that even viewing the evidence in the light most favorable to the non-moving parties, the appellants, and resolving factual disputes in their favor, Weakley's negligence was extraordinary and not a normal response to the situation created through any negligence on the part of IHC or IHC. The negligent act was not a reasonably foreseeable consequence of IHC's user service alleged negligence and as in Bowman, it was an efficient intervening cause of the accident. As you've noted, Judge Loken, the Bowman case is dispositive on this appeal, but this case is much more egregious as you've noted, Judge Loken, than the facts of the Bowman case because unlike Bowman, Weakley knew he was in a construction zone. He had signs telling him to slow down. He knew backups were uncommon in construction zones and he knew he had to have a heightened sense of awareness to be able to react to backups and stop his truck. Also, the proximate cause theories here are far more remote than the proximate cause theories that were rejected in Bowman because in Bowman, the truckers there, the truckers that were actually sued there, caused the backup. Here, Sawyer and IHC did not cause the backup and as important, they did not cause Weakley to drive distracted. The Bowman case sets out the Nebraska law on intervening cause. Those elements are that the negligent actions of a third party intervening, the third party had full control of the situation, the third party's negligence could not have been anticipated, and the third party's negligence directly resulted in injury to the plaintiff. Three of those four elements are not contested. It is not contested that Weakley's intervening negligence caused the accident. It's not contested that Weakley was in full control of his truck and it's not contested that his negligence resulted in the Powell family dying. The only element that's contested is whether Sawyer and IHC could have anticipated Weakley's negligence. As Judge Smithkamp noted, however, this is fact-specific, meaning the standard is not whether it is generally foreseeable that someday, somehow, someway, a motorist might drive distracted and might cause an accident. Instead, the question is whether Sawyer and IHC should have anticipated or foreseen Weakley's specific negligence. The Nebraska law... Counsel, what about the testimony or the evidence that was presented about the general negligence of the regular driver, that most drivers are glancing away from their front view every few seconds, looking down, and that Mr. Weakley's conduct could arguably fit within that sort of, I don't know, average, not-so-perfect driving. That the standard should be the least sophisticated driver standard. That's what they're trying to advocate. No, I don't mean least sophisticated driver. I mean sort of everyday driver who, I don't, I'm guessing it's probably right that drivers aren't focused directly in the front of what's in front of them 100% of the time, that we're distracted in a number of ways, and that that's for good or for bad is commonplace. So how do you factor that into this analysis? Well again, the duty to anticipate negligence or anticipate somebody's negligence is fact-specific. It's individual to that driver, so it's individual to Weakley. And it's important here, and I was going to bring this up just now, that that argument that the court shouldn't focus on the minutiae of Weakley's specific negligence, and instead should, instead it is foreseeable that all drivers will allow themselves to drive distracted at least 30% of the time, that is an argument that is attempting to impose absolute liability because what appellants argue is that Sawyer and IHC are liable any time the distracted driver causes an accident, regardless of the fact that there is no way that Sawyer or IHC can ever know what motorist will drive distracted through a construction zone, or when that unknown motorist will drive distracted. So the standard isn't, can somebody drive distracted and can somebody cause an accident? If that were the standard, that's absolute liability. And so the standard here is, can you anticipate Weakley's negligence driver? And they presented no evidence that we could have anticipated that Weakley would be that one driver that drove distracted that day. Counsel, is there a Nebraska case saying absolute liability is not okay here? Well, I think Mr. Shuck's going to talk about the Malalevsky case, which was also discussed. Malalevsky had to do with the fact that, you know, you're just not responsible for negligent drivers who just ignore the signs that are out there. And that's the point. So I mean, yes, is there something to say you can't have absolute liability? I think that's generally understood. There's no such thing as true liability. Is there a case that rejects a plaintiff's arguments with language like you used, that would be an absolute liability standard? I guess I'm relying on Baumann, I'm relying on Malalevsky, and I'm relying on the Elmo Greer case. Does it sound the way I said it? No, I'm paraphrasing. But absolute or strict liability is a common phrase in tort law that has some fairly specific meaning, as opposed to just saying, well, you know, I mean, your argument is, well, that would every driver, and the case law says, look at the specifics. That's different than saying, that's an absolute liability argument, and that's bad law. That is bad law to say it's absolute liability. I agree. I want Nebraska Supreme Court support for that. I think you're probably right. But if the Nebraska Supreme Court has never put it in those terms, then we're not going to. Okay, I'm paraphrasing. I mean, absolute liability, those are buzzwords. Right, right. You want support for the buzz, I want to know, otherwise... So my point is, Your Honor, that there's no evidence offered that we could have anticipated Wheatley's negligence. And going back to the Lasso case, and the prior precedent that this court has relied on in determining Bauman is dispositive in this case as well. So the fact that there's no question of fact that we could have anticipated Wheatley's negligence, and that we could have anticipated or foreseen that Wheatley would be the only driver that wouldn't see the patently obvious backup that day, that every other motorist saw that didn't need that backup. That's the reason why summary judgment was proper. And that's the reason why I'm asking on behalf of myself and IHC that the court affirm the district court's order granting summary judgments. And for the remainder of the time, I will turn it over to Mr. Shuck. Just a second, I would like to go back and revisit what Judge Kelly asked about, and that is the sort of 30% of drivers that are always distracted in just sort of the ordinary course of the way people drive. And most of the time those distractions don't result in tragedy, right? But if we're supposed to analyze this case in a fact-specific manner, do we hold Wheatley to sort of the average driver standard? Or because he's a professional driver, is he held to a different standard? Do we expect more of professional drivers? For example, it's a general rule people don't leave their crews on in construction zones. I mean, and if you look at Wheatley as a professional driver, one would expect him to pay more attention perhaps to those types of rules. He certainly held himself to a higher standard. He testified that he held himself to a higher standard because of his training. So he certainly was, in his own words, a professional driver that had to have this heightened sense of awareness in the construction zone. So is he determined to a standard of ordinary care versus extraordinary? I think he has to determine his responsibilities as a driver based on what his own testimony is. He held himself out as a professional driver, as a higher standard driver. He told us in his deposition that he knew that this was a common occurrence in construction zones, that he had to pay attention to the road, and according to his own standard, and of course, Nebraska law, the range of vision rule, he didn't meet any of those standards. So whether you just go on a regular Nebraska's law on the range of vision, or you go to his heightened standard that he testified that he had to follow, that he was trained to follow, he brings you to one. I would like to give Mr. Weakley a chance to discuss his points. Thank you. It's Dan Shuck from the Shuck Law Firm. I have the honor of representing Interstate Highway Construction in this matter. To get back to what Judge Kelly said, I think it's important also to remember that this accident occurred in a construction zone, and Mr. Weakley had been in the construction zone for approximately three miles prior to the collision. So when we talk about 30% of the drivers, there's no doubt that when you're in a construction zone, you have an obligation, if not legally at least, just as a standard of care, to have a heightened awareness, and I believe the testimony of Mr. Weakley established that. Also, compared to Baumann on this date, it was sunny. It was 11 o'clock in the morning. It was a very flat stretch of road. Baumann was at night. Again, the remoteness is important here. Because Pat did such an eloquent job of pointing to a specific document that the plaintiffs pointed out in the reply brief, and I failed to point out, it is Judge Smitskamp's memorandum and order entered on March 23, 2020. It's document 351, and it goes specifically to the alleged spoliation issue. You'll note on page 7, footnote 6, Judge Smitskamp specifically went through the analysis of this issue, and as Judge Loken and Judge Kelly pointed out, she drew the assumption that these alleged destroyed documents would pose an inference that would be unfavorable to IHC. Then she went on to state, even assuming IHC's spoliation of evidence was willful, any adverse inference the jury could draw from the missing documents could not have led to a verdict in the plaintiff's favor. They keep saying documents were deleted. The documents they referred to were documents that were produced at a later date. My time has run out, and I thank you for the opportunity to speak to you today. Very good. Mr. Ruzynka for rebuttal? I'll give you a minute for rebuttal. Thank you, your honor. I appreciate it. I want to focus just briefly on the time that I've got on the difference between some of the defendant accident causers that we have talked about. In Heatherly, the case we haven't talked about much, where it was determined that there was no intervening cause, that driver had stolen a truck, was driving 90 miles per hour up an off-ramp when he hit the plaintiffs. That was determined to be foreseeable and not to be an intervening cause. In our case, the defendant, Mr. Slezak, was driving 14 hours, three hours over the legal limit, was fatigued, testimony that he was asleep at the wheel, a fire truck had driven by him with Mr. Weekly was not speeding. He had his cruise control set at 62 after going miles with no interruption and traffic freely flowing. He was on his Bluetooth, which is legal, talking to his wife, which is legal, and he reached for a soda, which is legal and which sadly drivers on our roads do from time to time. Mr. Watts foresaw that this would happen. Mr. Weekly testified that he would not have done any of those things had there been additional warning. The state put up additional warning signs after this accident occurred. Mr. Watts was out trying his best to get people's attention and he was not there on this day. After the accident, Mr. Watts testified that this is what he always feared happened. Traffic would go from 30 to 40 miles an hour to zero with no warning. That is a fact issue that the jury should be allowed to confront. We thank the court for your time today. Thank you, counsel. The case has been well briefed and argued and we'll